# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JESSE CROUCIER,<br><br>　　　　　　　　　　　Plaintiff,<br><br>v.<br><br>CREDIT ONE BANK, N.A., et al.,<br><br>　　　　　　　　　　　Defendant. | Case No.: 18cv20-MMA (JMA)<br><br>**ORDER GRANTING DEFENDANT'S MOTION TO COMPEL ARBITRATION AND TO STAY ACTION**<br><br>[Doc. No. 7] |

Plaintiff Jesse Croucier brings this action against Defendant Credit One Bank, N.A. ("Defendant" or "Credit One") alleging causes of action for: (1) violations of California's Rosenthal Fair Debt Collection Practices Act, California Civil Code § 1788 *et seq.*; (2) violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.*; and (3) violations of California's Unfair Competition Law, California Business and Professional Code § 17200. Defendant moves to compel arbitration of Plaintiff's claims and stay the action pending arbitration. *See* Doc. No. 7. Plaintiff filed an opposition to the motion, to which Defendant replied. *See* Doc. Nos. 11, 12. In addition, Plaintiff has filed a First Amended Complaint. *See* Doc. No. 10. For the reasons set forth below, the Court **GRANTS** Defendant's motion and **STAYS** this action.

## BACKGROUND

In February 2017, Plaintiff applied to open a credit card account with Defendant. In response, Defendant opened the account and mailed Plaintiff a credit card and copy of the Visa/Mastercard Cardholder Agreement (the "Cardholder Agreement"), which purports to govern the relationship between Plaintiff and Defendant. *See* Def. Ex. C. The Cardholder Agreement includes a choice of law provision stating that Nevada law governs the Agreement, and the terms of the Cardholder Agreement include consent to receive communication from Defendant through various means including via "automatic telephone dialing system" ("ATDS"). *See id*. at 5, 6. The Cardholder Agreement also includes a broad arbitration agreement. *See id*. at 7. A clause in the Arbitration Agreement titled "No Class Arbitration or Consolidation or Joinder of Parties" provides:

> All parties to the arbitration must be individually named. Claims by persons other than individually named parties shall not be raised or determined. Notwithstanding anything else that may be in this Arbitration Agreement or the Card Agreement, no class action, private attorney general action or other representative action may be pursued in arbitration, nor may such action be pursued in court if any party has elected arbitration.

*See id.* at 8. The Arbitration Agreement also contains a "poison pill" clause, which states:

> If the section titled 'No Class Arbitration or Consolidation or Joinder of Parties' is declared unenforceable in a proceeding between you and us, without impairing the right to appeal such decision, this entire Arbitration Agreement (except for this sentence) shall be null and void in such proceeding.

*See id.*

Between May and August 2017, Plaintiff ceased making payments on the account, and Defendant began calling Plaintiff to request payment using an ATDS. *See* Doc. No. 10 ¶ 22. On August 22, 2017, Plaintiff's counsel faxed Defendant a letter expressly revoking Plaintiff's consent to be contacted by Defendant through any means. *See id.* ¶

25. Plaintiff alleges that after August 22, 2017, Defendant continued contacting Plaintiff via ATDS and other means. *See id.* ¶ 29.

On January 9, 2018, Plaintiff served Defendant with his original Complaint alleging causes of action under California Civil Code § 1788 and 47 U.S.C. § 227. On March 1, 2018, Defendant filed its motion to compel arbitration. Plaintiff filed his First Amended Complaint on April 27, 2018, adding a cause of action under California's Unfair Competition Law ("UCL"), California Business and Professional Code § 17200, for damages and injunctive relief. On April 30, 2018, Plaintiff filed his opposition to Defendant's motion to compel. Plaintiff argues that a clause in the Arbitration Agreement which precludes an individual from bringing claims for relief on a class or representative basis is invalid under California law as set forth in *McGill v. v. Citibank, N.A.*, 2 Cal. 5th 945 (2017), because it deprives Plaintiff of the right to pursue his newly added claim for public injunctive relief under the UCL. In reply, Defendant challenges the First Amended Complaint generally, arguing that it was filed outside the time to amend as a matter of course, and without seeking leave of court. In the alternative, Defendant contends that (1) that the Federal Arbitration Act preempts the *McGill* rule; (2) the Nevada choice of law provision in the Cardholder Agreement renders *McGill* inapplicable; and (3) *McGill* is inapplicable because Plaintiff is not seeking public injunctive relief.

## **LEGAL STANDARD**

The Federal Arbitration Act ("FAA") permits "[a] party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration [to] petition any United States District Court . . . for an order directing that . . . arbitration proceed in the manner provided for in [the arbitration] agreement." 9 U.S.C. § 4. Upon a showing that a party has failed to comply with a valid arbitration agreement, the district court must issue an order compelling arbitration. *Id.*

The Supreme Court has stated that the FAA espouses a general policy favoring arbitration agreements. *AT & T Mobility v. Concepcion*, 563 U.S. 333, 339

(2011). Federal courts are required to rigorously enforce an agreement to arbitrate. *See id.* Courts are also directed to resolve any "ambiguities as to the scope of the arbitration clause itself . . . in favor of arbitration." *Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Jr. Univ.*, 489 U.S. 468, 476–77 (1989).

In determining whether to compel a party to arbitrate, the Court may not review the merits of the dispute; rather, the Court's role under the FAA is limited "to determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue." *Cox v. Ocean View Hotel Corp.*, 533 F.3d 1114, 1119 (9th Cir. 2008) (internal quotation marks and citation omitted). If the Court finds that the answers to those questions are "yes," the Court must compel arbitration. *See Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985). If there is a genuine dispute of material fact as to any of these queries, a district court should apply a "standard similar to the summary judgment standard of [Federal Rule of Civil Procedure 56]." *Concat LP v. Unilever, PLC*, 350 F. Supp. 2d 796, 804 (N.D. Cal. 2004).

Agreements to arbitrate are "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Courts must apply ordinary state law principles in determining whether to invalidate an agreement to arbitrate. *Ferguson v. Countrywide Credit Indus.*, 298 F.3d 778, 782 (9th Cir. 2002). As such, arbitration agreements may be invalidated by generally applicable contract defenses, such as fraud, duress, or unconscionability. *Concepcion*, 563 U.S. at 339-41.

## DISCUSSION

### 1. Plaintiff's First Amended Complaint is Operative

As an initial matter, Defendant contends that Plaintiff's Amended Complaint is inoperative because it was purportedly filed outside the time to amend the Complaint as a matter of course under Federal Rule of Civil Procedure 15(a)(1), and without leave of court.

Pursuant to Rule 15(a)(1), a party may amend a pleading to which a responsive pleading is required once as a matter of course until 21 days after service of a responsive pleading or motion under Rule 12(b), (e), or (f). Fed. R. Civ. P. 15(a)(1)(B). Where a responsive pleading is required, the 21-day deadline to amend is not triggered until service of a responsive pleading or Rule 12 motion. *See Swanigan v. City of Chicago*, 775 F.3d 953, 963 (7th Cir. 2015) ("Because no responsive pleading or motion to dismiss has been filed, the 21-day clock under Rule 15(a)(1)(B) never started and [plaintiff] retained the right to amend his complaint"). Responsive pleadings for purposes of Rule 15(a) are considered to be those pleadings set forth in Rule 7(a). *See Zaidi v. Ehrlich*, 732 F.2d 1218, 1219–1220 (5th Cir. 1984) (finding that court should define term "responsive pleading" in terms of what constitutes pleading under Rule 7(a)); Fed. R. Civ. P. 7(a).

Here, Plaintiff filed a complaint, to which a responsive pleading is required. Defendant has not filed a responsive pleading, as defined by Rule 7(a), or a motion under Rule 12(b), (e), or (f), but contends that Plaintiff's time to amend by right has nonetheless expired. In support of this contention, Defendant cites no authority beyond the text of Rule 15(a) itself. Defendant highlights the fact that Plaintiff filed his First Amended Complaint 56 days after Defendant filed its motion to compel arbitration. However, Defendant provides no binding authority showing a motion to compel arbitration triggers the 21-day deadline to amend as a matter of course under Rule 15(a)(1).

At least one district court has considered the issue recently. In *Stockade Cos. v. Kelly Rest.,* the court considered the relationship between a motion to compel arbitration and the time to amend as a matter of right. *See Stockade Cos., LLC v. Kelly Rest. Grp., LLC,* No. 1-17-cv-143, 2017 WL 2635285 (W.D. Tex., June 19, 2017). Relying upon the plain terms of the applicable Federal Rules, the court concluded that the motion to compel did not trigger the 21-day deadline to amend as a matter of right. *Id.* at *3. Pursuant to Rules 7 and 15, it appears that Defendant's motion to compel arbitration did not trigger the 21-day amendment deadline. In any event, the Court is mindful that Rule

15 also directs that courts "should freely give leave" to amend. Fed. R. Civ. P. 15(a)(2). This is particularly so at the outset of litigation, when the responding party will suffer no prejudice as a result. Accordingly, the Court will consider Plaintiff's First Amended Complaint to be the operative pleading in this action.

### 2. *A Valid and Enforceable Arbitration Agreement Exists*

The central issue here is the enforceability of the Arbitration Agreement contained in the Cardholder Agreement.[1] Plaintiff asserts the Arbitration Agreement is unenforceable under the California Supreme Court's decision in *McGill v. Citibank*, *supra*, which held unenforceable a clause in an arbitration agreement precluding the right to seek public injunctive relief under the UCL. Plaintiff asserts that language in the Agreement requiring the arbitration of claims solely on an individual basis operates to deprive Plaintiff of his statutory right to pursue public injunctive relief under the UCL, thus rendering the Agreement unenforceable under *McGill*. Plaintiff then points to a "poison pill" clause that renders the entire Arbitration Agreement unenforceable if the clause precluding claims for public injunctive relief is found unenforceable. *See* Doc. No. 11 at 6. Defendant contends that *McGill* is preempted by the FAA, or alternatively, *McGill* does not control because the Agreement is governed by Nevada law, pursuant to the Agreement's choice of law clause. The Court does not reach these issues because it finds *McGill* inapplicable on other grounds.

*McGill* builds upon the California Supreme Court's decisions in *Broughton* and *Cruz*, which held that claims for public injunctive relief are not arbitrable, reasoning that provisions requiring arbitration of such claims impermissibly contravene statutory rights to public injunctive relief. *Broughton v. Cigna Healthplans of California*, 21 Cal. 4th 1066, (1999); *Cruz v. PacifiCare Health Systems, Inc.,* 30 P.3d 1157 (Cal. 2003). *McGill* extends this reasoning in disallowing arbitration agreements that preclude any claims for

---

[1] The scope of the Agreement, if valid, is not disputed.

public injunctive relief. *See McGill,* 2 Cal. 5th at 955. *McGill* also adopts the *Broughton-Cruz* rule's distinction between private and public injunctive relief in delineating its own rule's boundaries. *See id.* *McGill* provides that "public injunctive relief under the UCL . . . is relief that has 'the primary purpose and effect of' prohibiting unlawful acts that threaten future injury to the general public." *Id.* Such relief "'by and large' benefits the general public and . . . benefits the plaintiff, 'if at all,' only 'incidentally' and/or as 'a member of the general public.'" *Id.* On the other hand, relief that may "incidentally benefit the public at large," but, "primarily resolves a private dispute between the parties and rectifies individual wrongs," is private, rather than public, relief. *Id.* "Relief that has the primary purpose or effect of redressing or preventing injury to an individual plaintiff—or to a group of individuals similarly situated to the plaintiff—does not constitute public injunctive relief." *Id.*

Several years prior to *McGill*, the Ninth Circuit clarified that where the relief sought does not "by and large benefit the public," an exception to the FAA based on the statutory rights to pursue public injunctive relief does not apply to invalidate the arbitration agreement. *Kilgore v. KeyBank, Nat. Ass'n*, 718 F.3d 1052, 1060 (9th Cir. 2013). Under *Kilgore*, "whatever the subjective motivation behind a party's purported public injunction suit, the *Broughton* rule applies only when the benefits of granting injunctive relief by and large do not accrue to that party, but to the general public . . ." *Id.* The plaintiffs in *Kilgore* alleged a violation of the UCL based on KeyBank's reporting of customers' defaults to credit agencies and sought a public injunction under the UCL against reporting these defaults. *Id.* at 1056. The Court held "the claim for injunctive relief here does not fall within the 'narrow exception to the rule that the FAA requires state courts to honor arbitration agreements,'" because the Court determined the plaintiffs did not seek public relief under the UCL, as construed by *Cruz*. *Id.* at 1060 (quoting *Cruz,* 30 Cal. P.3d at 1162). The *Kilgore* Court found the relief sought did not have "the primary purpose and effect of prohibiting unlawful acts that threaten future injury to the general public" because the benefits of the injunction

7

"while ostensibly implicating third parties," would accrue almost exclusively to the plaintiffs and those similarly situated. *Id.* The Court emphasized that "the class affected by the alleged practices is small," and more generally, "there is no real prospective benefit to the public at large from the relief sought." *Id.* at 1061.

Synthesizing the primary holdings of *Kilgore* and *McGill*, the Court finds that Plaintiff's requested relief does not have the "primary purpose and effect of prohibiting unlawful acts that threaten future injury to the public," but rather "has the primary purpose or effect of redressing or preventing injury to an individual plaintiff--or to a group of individuals similarly situated to the plaintiff," and thus does not constitute public injunctive relief under *McGill*. *See McGill,* 2 Cal. 5th at 955. Each specific violation alleged in the First Amended Complaint entails unlawful conduct directed only at the Plaintiff, rather than the public at large. Plaintiff alleges in great detail Defendant's unlawful conduct directed at Plaintiff, including that Defendant "made over 100 calls to Plaintiff after receipt of the Cease and desist letter," and that "these collection calls were made to Plaintiff sometimes 7-10 times per day." *See* Doc. No. 10. However, Plaintiff does not specifically allege similar conduct directed at individuals other than the Plaintiff or the public at large.

Another district court recently relied upon *Kilgore*'s distinction between public and private injunctive relief in finding that *McGill* did not apply to invalidate an arbitration agreement waiving claims for public injunctive relief because, like in *Kilgore*, the plaintiff sought private injunctive relief, and thus did not invoke the narrow state law exceptions to the FAA's requirement of enforcement. *Wright v. Sirius XM Radio Inc.*, No. 16-cv-1688, 2017 WL 4676580, at *9 (C.D. Cal. June 1, 2017). Wright alleged a violation of the UCL based on Sirius' refusal to transfer his broadcast subscription to a new device, even though Wright purchased a "lifetime" subscription. Wright sought an injunction barring Sirius from "(1) terminating or purporting to terminate [lifetime subscriptions]; (2) failing to honor any and all 'lifetime' satellite radio subscriptions previously purchased; and (3) charging and/or purporting to charge Plaintiff and/or Class

members any additional monies for any such services." *Id.* The court found that these requests would "solely benefit the putative class members" and not the general public. *Id.* While Wright also alleged defendant "made a practice of regularly canceling and limiting or prohibiting transfers of lifetime subscriptions," and sought an order "enjoining Defendant from committing such unlawful, unfair, and fraudulent business practices," the court found that "such vague, generalized allegations do not request public injunctive relief." *Id.*

Likewise, while Plaintiff alleges "Credit One's regular business practice is to collect upon defaulted debts from multiple consumers through the use of phone calls to California Citizens' cellphones using ATDS and/or Recorded voice," this conduct does not violate the statutes Plaintiff invokes when consumers have consented to such contact, as Credit One's customers do via the Cardholder Agreement. *See* Def. Ex. C at 4; 42 U.S.C. § 227. Plaintiff does attach the modifying phrase, "as part of Credit One's regular business practice," to at least one allegation of unlawful conduct direct toward Plaintiff, but as the court observed in *Wright*, "such vague, generalized allegations do not request public relief." *Wright* No. 16-cv-1688, 2017 WL 4676580, at *9.

Even if Plaintiff had specifically alleged a regular practice of continuing ATDS collection calls *after* revocation of consent, the putative class affected by the alleged conduct would be limited to a small group of individuals similarly situated to the plaintiff. The class would consist of (1) Credit One customers, (2) who failed to make timely payments, (3) expressly revoked consent to receive ATDS calls, and (4) continued to receive such calls. Relief benefiting this particularized group stands in contrast to the public relief requested in *McGill,* which sought to enjoin Citibank from engaging in unlawfully deceptive marketing practices directed at the general public.

The procedural history in this case also indicates that the injunctive relief sought has the primary purpose of "redressing injury to an individual plaintiff." *McGill*, 2 Cal. 5th at 955. Plaintiff's original Complaint alleged three causes of action for violations under California Civil Code §1788.14(c) and 47 U.S.C. § 227 seeking awards of actual

damages under Section 1788.30(a), "including compensatory damages for Plaintiff's emotional distress for the harassing telephone calls," statutory damages for each call to Plaintiff made in violation of Section 227, and injunctive relief prohibiting such conduct in the future. *See* Doc. No. 1. After Defendant moved to compel arbitration, and over 100 days after filing the original Complaint, Plaintiff amended his pleadings to add a fourth cause of action seeking public injunctive relief under the UCL. Plaintiff did not cite new facts or reasoning supporting the additional claim. Plaintiff then opposed Defendant's motion to compel based largely on its public relief claim, which Plaintiff asserts renders the Arbitration Agreement invalid under *McGill*. The addition of the public relief claim in the absence of new factual information, and its use as a means to avoid arbitration, further indicates that the purpose of the relief sought is unique to Plaintiff.

### 3. *The Agreement is Not Unconscionable*

Finally, Plaintiff argues that the Arbitration Agreement is substantively unconscionable because *McGill* invalidates the Agreement. However, as discussed above, because Plaintiff is not seeking relief which would inure to the public's benefit, Plaintiff's argument based on *McGill* fails. His derivative challenge regarding the substantive unconscionability of the Agreement likewise fails.[2] The parties do not contest the validity of the Agreement on other grounds, and the scope of the Agreement, if valid, is not disputed. Therefore, in light of the foregoing, the Court concludes that the parties formed a valid and enforceable arbitration agreement that encompasses the dispute at hand.

//
//

---

[2] Both substantive and procedural unconscionability must be present for a court to refuse to enforce a contract due to unconscionability. *See Baltazar v. Forever 21, Inc.*, 62 Cal. 4th 1237, 1243 (2016). Because Plaintiff fails to demonstrate that the Agreement is substantively unconscionable, the Court need not address procedural unconscionability.

## Conclusion

Based on the foregoing, the Court **GRANTS** Defendant's motion to compel arbitration and **STAYS** this action. *See* 9 U.S.C. § 3. The Clerk of Court is instructed to administratively close the case. The parties must notify the court within seven (7) days of the conclusion of arbitration proceedings.

**IT IS SO ORDERED**.

DATE: June 11, 2018

_____
HON. MICHAEL M. ANELLO
United States District Judge